PHILIP HERRMAN, Respondent, *v.* THE MERCHANTS' INSURANCE COMPANY, Appellant.

Words in a policy of insurance must be taken in their ordinary sense, as commonly used and understood; and if the sense in which they were used is uncertain, as they are found in a contract prepared and executed by the insurer, they should be construed most favorably to the insured.

Where a policy of fire insurance contains a condition avoiding it in case the buildings become "vacant and unoccupied," to avoid the policy the buildings must not only be unoccupied but vacant.

A dwelling-house furnished throughout, from which the owner has removed for a season, intending to return and resume possession, is not vacant.

Where, therefore, defendant issued a policy, containing that condition, upon plaintiff's summer residence, from which he removed in November, leaving it furnished and in charge of a person living near, intending to return again the following spring, *held*, that the house was not vacant within the meaning of the policy; and so, that there was no breach of the condition.

*Alston* v. *Ins. Co.*, 80 N. C. 326; *N. A. F. Ins. Co.* v. *Zaenger*, 63 Ill. 464; *Am. Ins. Co.* v. *Padfield*, 78 id. 167, distinguished.

The policy also contained a condition avoiding it in case of an increase of risk "internally or externally," unless proper notice thereof in writing was given. Upon the trial of an action upon the policy, defendant offered to show that the risk was increased by the non-occupancy; this was excluded. *Held*, no error; that as the policy contained express conditions as to vacancy and occupancy, and as to the mode in which and purposes for which the house was to be used, it was not to be presumed that the general condition was intended for any of the cases thus specially provided for; and so, that if the risk was thus increased the condition was not violated.

(Argued April 14, 1880; decided June 1, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court. (Reported below, 12 J. & S. 444.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*George W. Parsons* for appellant. The house, when the fire occurred, was vacant and unoccupied within the meaning of the terms of the policy. (*Whitney* v. *Black River Ins. Co.*, 9 Hun, 41; 72 N. Y. 117; *Paine* v. *Agricultural Ins. Co.*, 5 id. 619; *Wusturn* v. *City Fire Ins. Co.*, 15 Wis. 138; *Harrison* v. *City Ins. Co.*, 9 Allen [Mass.], 231; *Dennison* v. *Phœnix Ins. Co.*, 9 Ins. L. Journ. 65; *Keith* v. *Quincy Mut. Ins. Co.*, 10 Allen, 228; *American Ins. Co.* v. *Padfield*, 78 Ill. 167; *North Am. Ins. Co.* v. *Zaenger*, 63 Ill. 464; *Corrigan* v. *Insurance Co.*, 122 Mass. 298; *Alston* v. *Old North State Ins. Co.*, 8 Ins. L. Journ. 428; *Sleeper* v. *New Hampshire*

*Fire Ins. Co.*, 56 N. H. 401; 55 id. 249; *Thayer* v. *Agricultural Ins. Co.*, 5 Hun, 566; Wood on Insurance, § 89, p. 180; *Franklin Savings Ins. Co.* v. *Central Ins. Co.*, 119 Mass. 240; *Ashworth* v. *Builders' Ins. Co.*, 112 id. 423; *Ætna Ins. Co.* v. *Burns*, Ky. Court of Appeals, 5 Ins. Law Journ. 69.) The description of the premises indicated that they were permanently occupied and constituted a promissory warranty which must be strictly performed. (Wood on Ins., § 165, p. 317; id., p. 341; *Mead* v. *North Western Ins. Co.*, 3 Seld. 530; *Wall* v. *East River Ins. Co.*, id. 370; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136; *First N. B.* v. *Ins. Co.*, 50 id. 45; Wood on Ins., p. 330, and cases cited; *Lee* v. *Howard Ins. Co.*, 3 Gray, 588; *Murdock* v. *Chenango Co. Ins. Co.*, 2 Comst. 210; *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn. 533; also 21 id. 19; 22 id. 235; *Gilbert* v. *The Phœnix. Ins. Co.*, 36 N. Y. 372; *Alexander* v. *Germania Ins. Co.*, 66 id. 464; 3 Allen, 569; 8 Cush. 114 and 127; 30 Me. 273; 31 id. 219; *Blumer* v. *Phœnix Ins. Co.*, 7 Ins. Law Journ. 833, July, 1878; *Poor* v. *Humboldt Ins. Co.*, id. 874, March, 1878; *Ætna Ins. Co.* v. *Burns*, 5 Ins. Law Journ. 69.) It was not necessary to prove a technical vacancy to present the question whether by any means, either externally or internally, the risk had been increased. (*Cornish* v. *Farm Buildings Fire Ins. Co.*, 74 N. Y. 295; *Hawes* v. *New England Ins. Co.*, 2 Curtis' U. S. C. 229; *Daniels* v. *Hudson R. Ins. Co.*, 12 Cush. 416; *Schenck* v. *Mercer Co. Ins. Co.*, 24 N. J. 447; *Mitchell* v. *Home Ins. Co.*, 32 Iowa, 421; *Kern* v. *Ins. Co.*, 40 Mo. 19; *Camden* v. *Cowley*, 1 W. Bl. 417.)

*N. B. Hoxie* for respondent. The premises were not, at the time of the fire, vacant or unoccupied within the meaning of the terms of the policy. (*Ran* v. *Home Ins. Co.*, 59 N. Y. 387; *Hoffman* v. *Ætna Ins. Co.*, 32 id. 405; *Ins. Co.* v. *Slaughter*, 12 Wall. [U. S.] 404; *Keith* v. *Quincy Mut. Ins. Co.*, 10 Allen, 228; *Wustrum* v. *City Fire Ins. Co.*, 15 Wis. 138; *Ashworth* v. *Builders' Ins. Co.*, 112 Mass. 422, 424; *Paine* v. *Agricultural Ins. Co.*, 5 N. Y. Sup. Ct. [T. & C.] 619.) The

insurer must be treated as having contemplated all the usual and ordinary incidents of the use of the property insured. ( *Whitney* v. *Black River Ins. Co.*, 72 N. Y. 117; *Hall* v. *Ins. Co. of N. A.*, 58 id. 292; *Harper* v. *N. Y. Ins. Co.*, 22 id. 441; *Harper* v. *Albany Ins. Co.*, 17 id. 194; *Bryant* v. *Poughkeepsie Ins. Co.*, id. 200; *Allemania Ins. Co.* v. *McClure*, 7 Ins. Law Journ. [Supr. Ct. Penn.] 182; *Baley* v. *Homestead Ins. Co.*, January 27, 1880, per ANDREWS, J.; *Bryan* v. *Peabody Ins. Co.*, 8 W. Va. 605; *Merrill* v. *Agricultural Ins. Co.*, 73 N. Y. 452; *Shearman* v. *Niagara Fire Ins. Co.*, 46 id. 526; *Gibbs* v. *Continental Ins. Co.*, 13 Hun, 611, 620; *O'Neil* v. *Buffalo Ins. Co.*, 3 Comst. 122; *Cummins* v. *Agricultural Ins. Co.*, 67 N. Y. 260; *Gamwell* v. *M. F. Ins. Co.*, 12 Cush. 167; *Wait* v. *Agricultural Ins. Co.*, 13 Hun, 371; *O'Brien* v. *Comm. Ins. Co.*, 6 J. & S. 417.)

EARL, J.    This is an action upon a fire policy, and the defense is a breach of certain warranties contained in the policy.

The insurance was upon a dwelling-house and other buildings, and upon certain personal property therein, and the fire which occasioned the loss occurred in the day time, in April, 1877, and probably was of incendiary origin.    The policy contained a condition that it should be void if the premises should become " vacant and unoccupied."    The dwelling-house was a summer residence of the plaintiff.    He resided in it in the summer and fall of 1876, and removed therefrom in November of that year, and went with his family to the city of New York, intending to return again about the middle of May.    He left all his furniture in the house, which was furnished throughout, and left his house in charge of a person who lived near thereto.

We should have had a different question for consideration if the condition had been that the policy should become void if the house should become " vacant or unoccupied," or simply " unoccupied."    Here we have the two words joined together, " vacant and unoccupied; " and what do they mean ?    They should not be taken in any technical or narrow sense.    They need not be taken in the sense in which they may have been

understood by underwriters, as both parties to this contract were not underwriters, supposed to be familiar with the meaning of such words when used in the business of fire insurance. But they must be taken in their ordinary sense, as commonly used and understood; and if the sense in which they were used is uncertain, as they are found in a contract prepared and executed by the insurer, they should be construed most favorably to the insured. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405; *Rann* v. *Home Ins. Co.*, 59 id. 387.) We do not progress much by ascertaining what the insurer meant by these words; but we must endeavor to ascertain how the insured understood and could properly understand them — in other words, the meaning which they convey to the common mind.

A dwelling-house is unoccupied when no one lives therein, but is not then necessarily vacant. A house filled with furniture throughout cannot be said to be " vacant," the primary and ordinary meaning of which is " empty." To avoid the policy, the premises must not only be unoccupied but also vacant. Force should be given to both words. This is not a casual contract drawn in haste, in which language has been carelessly used; but it is a form of contract used by the defendant in its business, probably adopted with great deliberation, every word of which, as we may suppose, has been carefully weighed. It was not intended that mere non-occupancy should avoid the policy; if it had been, it cannot be supposed that the word " vacant" would have been superadded. It is not necessary to hold that a house with a few articles of furniture in it, from which the owner or tenant has removed, with no definite intention of returning, might not be regarded as vacant, or found to be so by a jury. It is sufficient to hold that a house thoroughly furnished, from which the owner has removed for a season, intending to return again and resume possession, is not, in any proper sense, a vacant house. There are many houses in and about the city of New York, and elsewhere, which are occupied only in the summer as summer residences, or only in the winter as winter residences, the furniture remaining in

them all the time; and for aught we know, these two words were adopted with a view to insurances upon such houses.

These precise words in conjunction have not often come under consideration in the reported cases. In *Alston* v. *Ins. Co.* (80 N. C. 326) there was a condition in the policy like the one under consideration. A tenant who was in possession of the house removed therefrom December 16, 1876, leaving some of his furniture in the house, and no one lived in the house thereafter until January 29 of the next year, when the house was destroyed by an incendiary fire. It was held that the policy was violated and avoided. It did not appear how much furniture was left in the house. As the occupancy had been by a tenant who had removed, the quantity was probably small; and it does not appear that the tenant intended to resume possession of the house, and there was no discussion or question as to the meaning of these two words used in conjunction. In *N. A. Fire Ins. Co.* v. *Zaenger* (63 Ill. 464), the policy contained the same condition, but the proof showed that the insured premises were not only unoccupied but absolutely vacant. In *Am. Ins. Co.* v. *Padfield* (78 Ill. 167) there was the same condition in the policy, and the tenant removed from the house insured, and surrendered up the possession and control thereof to the insured. He left in the house simply a table, a crib and a straw tick belonging thereto, without, so far as appears, ever intending to return to the house or take the property thus abandoned. It was properly held that the house was vacant and unoccupied. It is true that the judge writing the opinion said (and I think erroneously) that to comply with the condition, some one must live in the house, and that such is the popular meaning of the words used. He said further : " For some purposes, the law might regard the leaving of a few such articles in a house as carrying with them possession in their owner, but in such cases, there must be an intention to thus take and hold possession ; but here there was no such intention by the tenant. On the contrary, he disclaimed all possession ; but such possession is not occupancy, in the popular sense."

There was also a condition in this policy that if the risk should be increased either "internally or externally," the insured should give proper notice thereof in writing, and have the same entered on the policy, and that any failure to comply with the condition should render the policy void. It is claimed on the part of the defendant that this condition was violated by non-occupancy of the house. Its counsel offered to show that the risk was increased by such non-occupancy, and the proof was rejected. Upon the assumption that the risk was thus increased, we are of opinion that this condition was not violated. The policy contained express conditions as to vacancy and occupancy, and as to the mode in which, and purposes for which, the house was to be used; and it is not to be supposed that this general condition was intended for any of the cases thus specially noticed. What is to be regarded in the business of insurance as an increase of risk is frequently a matter of much difficulty, about which men, even experts, differ. Such general language must, therefore, be strictly construed against the underwriter, or else one may not know whether he has violated his policy or not, until the verdict of a jury upon disputed evidence. The words risk increased "either internally or externally," do not convey to my mind an increase of risk by removal from the house, but an increase of risk by internal or external changes in the house itself, or its exposure, which manifestly increase the risk of fire so that it is not the same risk insured.

There was no question of fact for submission to the jury, and the court did not err in directing a verdict for plaintiff.

The judgment should be affirmed.

All concur.

Judgment affirmed.