ATLANTIC BASIN IRON WORKS, Appellant, *v.* THE AMERICAN INSURANCE COMPANY and Others, Respondents.

Second Department, February 1, 1928.

**Insurance — marine insurance — plaintiff is engaged in ship repairing and policy issued was general floating policy against liability — while plaintiff was repairing ship, it caught fire and fire spread to lighter — judgment was recovered against plaintiff for damage to lighter — this action is to recover over — typewritten rider did not relieve defendants from liability — defendants are liable — appeal — question not raised below not considered.**

The plaintiff is engaged in the business of ship repairing. While at work on a steamship, the steamship caught fire and the fire spread to a lighter which was alongside and damaged it. The owners of the lighter recovered a judgment against the plaintiff in the Federal court for the damage done. The plaintiff in this action seeks to recover over against the defendants on a policy of insurance issued to the plaintiff. The policy is a general floating policy, designed to protect the plaintiff from liability while engaged in the building or repairing of ships, and does not purport to cover any specific building or ship or any specific job. The court below held that the policy did not cover the plaintiff's loss on the theory that there was an irreconcilable conflict between the typewritten rider and the printed portion of the policy, and that, therefore, the typewritten provisions of the policy should prevail, and on the further ground that the protection and indemnity clause was limited to the interest of the plaintiff in " the insured ship," and that the plaintiff had no interest in " the insured ship," since the policy does not purport to cover any particular ship.

---

* Motion for stay was denied.   (See 223 App. Div. 734.)—[REP.

The typewritten rider is not in irreconcilable conflict with the printed portions of the policy, and that part of the policy which purports to insure the plaintiff against liability arising out of the repairing of ships is in effect and protects the plaintiff against the loss occasioned in this case.

The contention that the plaintiff did not have an interest in the ship so covered by the policy, cannot be sustained, for the policy was not limited to any specific ship, but its terms would apply to a particular ship that, for the time being, might be in the possession of the plaintiff for the purpose of repair, and, therefore, it did apply to the ship which the plaintiff was repairing at the time the fire occurred. The plaintiff had an interest in that ship, growing out of the work it was doing upon it. It had an interest, *first*, in a proprietary way, which was insurable; *second*, it had a liability to third parties, because of the work, which was insurable; and *third*, it had a corresponding liability, because of the work, to the owner of the ship upon which it was doing the work, which likewise was an insurable interest.

The contention that a majority of the insurers did not consent in writing to the plaintiff's defense of the action in the Federal court, and that, therefore, the expense of defending that action cannot be included, cannot be sustained, for that question was not raised below, and, therefore, will not be considered on appeal.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 10th day of January, 1927.

*Le Roy Mandle* [*Don R. Almy* with him on the brief], for the appellant.

*Paul Speer*, for the respondents.

CARSWELL, J. This case was submitted to the trial court upon an agreed statement of facts. A jury was waived and the court was to direct a verdict as if a jury were present. The defendants have had a verdict.

A policy was issued to the plaintiff, a ship repairing concern, by the defendants, who are seven insurance companies. While this policy was in effect, the plaintiff was engaged in repairing the steamship *Monterey* at Pier 13, Brooklyn. During that same period a lighter (*Dixie*) containing a cargo of jute came alongside the steamship, and while there it was damaged by fire. The plaintiff was held liable for the damages, by a judgment of the United States District Court, to the owner of the lighter and cargo, upon the ground that the fire was caused by plaintiff's negligence, it appearing that the fire was communicated to the lighter *Dixie* from the steamship *Monterey*, upon which boat the plaintiff was making repairs. This action was then commenced upon the policy to recover the amount of that judgment of $7,500, which plaintiff was required to pay, together with reasonable counsel fees agreed to be $750.

The only question involved is the construction of the policy issued to the plaintiff by the several defendants. The court at Trial Term has held that the policy did not cover the plaintiff's losses herein. The court concluded that there was an irreconcilable conflict between the typewritten rider and the printed portion of the policy, and that, therefore, the typewritten provisions should prevail; and further, that the provision with respect to insurance under the printed " Protection and Indemnity " clause was limited to the interest of the insured in " the insured ship," that the plaintiff had no interest in " the insured ship" since the court concluded the policy " does not insure a ship," and that consequently the printed provision in question had no application to this case. (128 Misc. 510.)

I am constrained to disagree with that construction.

It is important first to observe what the general character of the policy is. A reading of all its clauses, and particularly the first typewritten clause, establishes that the policy had for its primary purpose the according to plaintiff of protection from *liability* while it was engaged in building or repairing vessels. The stipulation of facts contains this:

" *Ninth.* That on or about the 19th day of July, 1921, the defendants duly issued and delivered to the plaintiff *a policy of liability insurance* in consideration of the premium paid or agreed to be paid and which was duly paid by the plaintiff."

The policy upon its face did not purport to cover any specific building or ship or any specific job in building or repairing vessels. It was a general floating policy covering any and all building or work on any vessels upon which the plaintiff was doing work. In my opinion, this phase was not given sufficient weight by the trial court.

Before further examining the form of the policy, reference should be made to the case of *Bushey & Sons* v. *American Ins. Co.* (237 N. Y. 24, 27). That was an affirmance of a decision of this court holding against the company. It involved a construction of the self-same printed portions of the policy involved in this case as to the effect thereon of a typewritten rider. The court there said, per POUND, J. " The language of the policy is not as clear and unequivocal as it might be, but it relates to loss to vessels ' completed or in the process of completion ' including materials assigned to vessels under construction. If it is fairly susceptible of two interpretations, one of which being that contended for by the insured, it should be most strongly construed against the insurer. (*Herrman* v. *Merchants Ins. Co.*, 81 N. Y. 184, 188, 190; *Janneck* v. *Met. Life Ins. Co.*, 162 N. Y. 574, 576, 577; *Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25, 35; *Paskusz* v. *Phila. Cas. Co.*, 213 N. Y.

22, 26; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287.) * * * A construction which makes the contract fair and reasonable will be preferred to one which leads to harsh or unreasonable results. * * * *When the insurer adopted the language* of the application in covering the risk, *it became the author of the ambiguity* and the ultimate cause of doubt.  It must *bear the burden of having obscure phrases* construed *in favor of the insured.*"   (Italics ours.)

And in *Harper* v. *Albany Mutual Insurance Company* (17 N. Y. 194, 198) the court said, per PRATT, J.· "A policy of insurance, like any other contract, should be construed so as to give it effect rather than to make it void.  The company have received a premium adequate, it is presumed, to the risk which they have taken, and hence nothing but the most stern legal necessity should constrain the court to give it a construction which would nullify it and render it a mere deception instead of the protection which the parties to it designed."

The policy involved herein is printed in the record, but there has also been furnished an exact duplicate of the policy itself.

The effect of the construction for which defendants contend is that their liability is to be found solely in the typewritten rider, and in the printed back, beginning with the words "Hull policy," with the names of the companies, and in certain typewritten matter inserted in appropriate spaces on that insurance back or cover. By construction they eliminate, in effect, the printed rider or portion of the policy that intervenes between the typewritten rider and the insurance policy back or cover.  They do so by concluding that there is an irreconcilable conflict between the typewritten matter and the printed "Protection and Indemnity" clause contained in the inside printed page.  The typewritten rider contains in the 1st clause a provision as follows: " $150,000.  To cover the Legal Liability of the assured from any cause whatsoever for loss * * * to vessels * * * and/or their cargoes * * * (which may be in their hands for or on which they may be engaged or preparing to engage in work or operations) arising from or in connection with the operation of their plant situated at (Brooklyn) New York City including work on or in connection with vessels anywhere in New York harbor * * *."

This 1st clause purported to protect and insure the plaintiff from liability to owners of vessels *in the possession of the plaintiff*.

The 2d clause in the typewritten rider reads· " This insurance is also *extended* to cover, subject to the terms of the Builders Risks Clauses as attached, *the interest of the assured in work on such vessels* completed or in process of completion."

This 2d clause afforded protection to the plaintiff for loss by the

plaintiff of the value of such work as the plaintiff had completed in or on particular vessels in the course or process of doing that work. This extended defendants' liability by giving the foregoing protection to the plaintiff, limited by restrictions, if any, upon such protection which were specified in the builders risks clauses. It did not purport to cut down the *general* protection given in the printed builders risks clauses so far as they related to subject-matter other than the protection to the plaintiff from loss of value of its own work on vessels, to which subject-matter the 2d type-written clause expressly extended protection, subject to limitations thereon, if any, in the builders risks clauses.

If the 2d clause were not on the typewritten rider, the printed matter would have full effect, since there is nothing in the 1st clause to exclude it as to the incident involved herein. And the 2d clause as thus interpreted does not preclude the giving of effect to the printed matter.

A literal reading of the typewritten rider and the printed page does not reveal any ambiguity or any conflict between them. An ambiguity is developed only by assuming that the printed page would not be in the policy but for the reference thereto in the 2d typewritten clause. This assumption, however, is unwarranted, since the printed page relates to matters regulating the liabilities and obligations between the insurer and the insured independent of and in addition to what is stated in the typewritten clauses, especially if we exclude the 2d clause for the moment from consideration.

Moreover, to construe the 2d typewritten clause differently, it would be necessary to read into it language which is not there, to the effect that the reference therein to the builders risks clauses was not to include any obligations specified in the " Protection and Indemnity " clause.

This being so, plaintiff was also given such insurance protection as may be contained in the printed matter, whether referred to in the typewritten riders or not, unless that printed matter is repugnant to and irreconcilable with the typewritten matter in the clauses just quoted.

When we examine the printed matter referred to in the 2d clause of this typewritten matter as " Builders Risks Clauses as attached," but which is denominated when in the printed policy as " Clauses for Builders' Risks," we find in three provisions a further printed clause entitled " Protection and Indemnity Clause." It reads as follows:

" *It is further agreed that if the Assured shall by reason of his interest in the insured ship become liable to pay and shall pay any*

*sum* or sums in respect of any responsibility, claim, demand, damages, and/or expenses arising from or *occasioned by any of the following matters* or things during the currency of this policy, that is to say: *Loss of or damage to any other ship* or boat or goods, merchandise, freight, or other things or interests, whatsoever on board such other ship or boat *caused proximately or otherwise by the ship insured* in so far as the same is not covered by the running down clause set out above." (Italics ours.)

We are not concerned with the running down clause herein. The foregoing printed clause, therefore, gave protection, whether viewed as an extension or otherwise, to the plaintiff against liability for damage to other ships caused by the ship (or work thereon) upon which the plaintiff was doing work. This protection in the printed clause is not in conflict with the typewritten clause nor irreconcilable with it. Therefore, the cases cited by the trial court with respect to the effect of the typewritten matter in conflict with printed matter have no application. The cases cited, in particular instances, have given full effect to the printed matter where typewritten clauses were attached to the policy but which were reconciled by construction with the printed matter. One of them, *Kratzenstein* v. *Western Assurance Co.* (116 N. Y. 54), went further to sustain company liability than it is necessary to go herein. There the *printed* clause described the coverage to be for " goods * * * on board * * * vessels * * * railroad or carriage." The *written rider*, however, omitted the word " carriage," but it was held the omission did not limit the coverage of the printed clause and that the difference was not irreconcilable. (See, also, *Benedict* v. *Ocean Ins. Co.*, 31 N. Y. 389.)

The remaining question is, whether this plaintiff has an interest in the ship so covered by the policy. The trial court has decided it did not. The character of the policy seems to be decisive of this question. It is a general floating policy applying to each and every vessel in the specific places upon which the plaintiff may be doing work, and is not *limited* to any specific vessel. When facts arise affecting a particular vessel, then the language used in the singular in the printed policy with respect to " the insured ship " applies to the particular ship involved, which in this case was the steamship *Monterey*. The steamship *Monterey* was covered by this policy and was " the insured ship " within it. The plaintiff certainly had an interest in the steamship *Monterey*, growing out of the work it was doing upon it. This interest was a three-fold interest, insurable on all phases. It had, *first*, a proprietary interest, which was insurable, in the work done which had not been paid for and for which it would have a lien; *second*, it had a liability

to third parties, because of the work and during the construction of the work, which was an interest which it might insure; and, *third,* a corresponding liability, because of the work, to the owner of the vessel upon which it was doing the work, which was an interest it might insure.

We would not be justified in straining by construction to relieve the defendants from an obligation or liability which they assumed in their own language and by their own policy form. Especially should this course not be pursued where it is possible to reconcile the printed word with the typewritten word, and where, if the defendants did not wish to assume the breadth of obligation thus arrived at, they could have stricken out the printed words or by typewritten words eliminated them from the policy. Neither of these things has been done by the defendants in this case, and, applying the doctrine of the cases cited above, in the light of which the foregoing clauses should be read, I think the conclusion should be that these defendants should be cast in damages for the amount of the loss involved herein, including counsel fee which the policy recognized should be paid in the event that there is liability in other respects.

One other point is urged by the respondents. It is that a majority of the insurers did not consent in writing to the respondent's (plaintiff herein) defense of the suit in the Federal court, and, therefore, the expense item may not be included. They rely upon *Cornell* v. *Travelers' Ins. Co.* (175 N. Y. 239). This question does not seem to have been raised below, and, therefore, may not be considered on this appeal, since there is no statement in the facts of any defect in this particular. On the contrary, there is a stipulation as to the amount of the services, and that they were reasonably of the value of $750. I do not think this point should be considered at this time. In any event, the case cited concerned itself with a refusal to allow such an item where the charge was based on defending a groundless suit against the insured. In this case the suit that was defended was not groundless. It was successfully prosecuted against the insured.

In my opinion, the judgment for the defendants should be reversed upon the law and the facts, with costs, and judgment directed in favor of the plaintiff against the several defendants, with costs.

LAZANSKY, P. J., RICH, YOUNG and KAPPER, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment directed in favor of the plaintiff against the several defendants, with costs.